We will now call case 20-30033. Jobe, I hope it's pronounced correctly, Jobe v. National Transportation Safety Board. It's Jobe, Your Honor. Jobe, my apologies. Jobe v. MTSV. Yeah, that's fine, thank you. We will hear from Ms. Chaffetz. Hope I didn't mess that up. Ms. Chaffetz, we'll hear from you first. Excellent. Thank you, Your Honor. Good afternoon. Your Honors, for more than 50 years, NTSB has called upon outside experts, including technical personnel from relevant aircraft designers, manufacturers, and operators to ensure that it can effectively investigate accidents. And NTSB and its counterparts around the world operate this way because they recognize that having aircraft-specific expertise is critical to the work that they do for aviation safety. These experts are essentially seconded to NTSB, where they function much like agency investigators and they operate under non-disclosure rules. So contrary to plaintiff's suggestion, we really know that they are not here participating in these investigations to gather information to take back to their employers. And at base— The secondment analogy is an interesting and powerful one. I take it, though, that at the end of the day, these are employees of companies. Sure, Your Honor. Go ahead, sir. Oh, sorry, did I miss— Go ahead. I'll have follow-ups on this, but go ahead. No, no, that— Is it a different analysis with respect to the foreign—I don't know if it's the foreign companies or the foreign agency. Do we have to look also to the annex to the convention in order to—I mean, in other words, does their role under the convention have to line up with what the NTSB normally—how the NTSB normally treats consultants? I just thought that the convention was an interesting wrinkle in this, and I wasn't 100 percent sure how to look at it. Sure, so let me take those in turn, and I'll start, Judge Duncan, with your question, and then, Judge Ho, I think I'll be able to go back to the fact that these are, of course, employees of various outside companies. You can answer, Judge Ho, first. I didn't— Oh, no, no, no, that's okay. That's quite all right. Judge Ho's coming back. So the convention functions here and has been in play now for some 70 years, creating this agreement across the international community about the way these investigations should work and the importance of having technical advisors and experts come into it. So the annex is very much of a piece with the domestic regulations. I mean, these have long worked together, and we are party to the convention because we think it's really important to have these voices at the table informing the NTSB investigation. And so there really isn't any misalignment here. Both the regulations and the annex make clear that the country that is taking the lead, that organization here, it's NTSB, is, in fact, in charge. Everybody recognizes that the rest of the investigation needs to happen under the control and guidance of that accredited organization and the investigator in charge that's named. That is a uniform approach, and it's understood that everyone is operating in service of the deliberative process of that organization here, NTSB. So we don't have any issue here. The disclosure rules, the confidentiality, everyone's expectations here are the same. And so the fact that you have technical advisors who are second to a NTSB equivalent here, it's France's BEA, that doesn't change the analysis. That's for a few reasons. Number one, you often have, when you have a consultant relationship, not every consultant is an independent contractor. So you're often dealing with somebody who's got multiple bosses, someone they work for as well as the person that's bringing in the consultant. But there's also case law about the fact that you can have a two-tier relationship like the Teague case, I think that's out of the Second Circuit, where you have somebody doing a report for someone else, and then that person in turn is the consultant that's actually providing expertise to the federal agency. So there's a lot of different ways in which, or a lot of ways to look at this, but at the end of the day, the answer is the same across the board, which is that, no, it doesn't change anything that we're dealing with a helicopter manufacturer and an engine manufacturer that were overseas. And to go back to Judge Ho's point, I mean, there, what I would say is that, absolutely, these are, of course, employees of companies, but they are not coming into this process when they show up for the on-scene investigation. They're not there as representatives of their companies. They're not lawyers. They're not there as representatives of their companies' proprietary interests. You're hoping that they will have expertise that would be helpful to you, objective, science, engineering type experience. Well, we're not just, yes, and it's required. I mean, to fall under the regulations and the convention, they have to be suitable, qualified experts who are coming in that capacity and not the attorneys. Right, but they are, I mean, they're at all times, I assume, employees of the companies? That's absolutely right. They are outside the government. They're not paid by the board. Right. But under the consultant corollary, I mean, that's the very nature of it, that it's a recognition that there are going to be instances where an agency needs to go to outside experts and whether on a paid or unpaid basis, bring them into the government process or have them form the deliberative process. And here, these individuals are actually functioning much more like employees than in a traditional consultancy situation. In a normal consultancy... But you would agree, though, that, I mean, I'm not an expert on the inner workings of the NTSB, of course, but I'm imagining that manufacturers of aircraft, you would consider to be the regulated community, not part of the regulator community. Well, NTSB is not, you know, it's different. FAA is, of course, involved in the process. Right, you're advising the regulators. But the point is, these are the companies that are regulated by the various transportation safety agencies of the United States government. Sure. Yeah. Do you have any case, pardon my nerves, do you have any case logs extending consultants to people or to individuals or entities that are associated with regulated parties, as opposed to independent third parties? So, offhand, I don't know of a case that falls precisely in line with this, although I'll give it some thought as I go forward in the argument. But what I will say is that certainly there's nothing... You understand the concern is, I mean... Right, let me... The consultant corollary is already, you know, it's certainly not expressly in the text, but one can understand reading interagency, interagency as including agents of the agency, if you will, even if they're not technically on staff. I get that. It does seem to me potentially a bridge too far, but at a minimum, it's certainly another step to say it's not only somebody outside the agency, but indeed it's somebody from one of the regulated entities. So, I mean, right. So here, they're not, it is important to understand NTSB's role, and they're not coming before NTSB in the capacity to advocate for themselves as a regulated entity. Look, to step back, I mean, plaintiff's entire case is the suggestion. We want to talk about what the case law is. Plaintiff's case rests on the idea that this is Klamath. And in Klamath, you really did have an entity, not a regulated entity, but you did have an entity with, in that case, a relationship with the federal government, with the Bureau of Indian Affairs coming forward, lobbying on behalf of their interests. And the Supreme Court held that that was a problem because the dispositive point there was that they were actually more like beneficiaries than consultants. They were trying to get something from the federal government. They were trying to gain an advantage that would specifically, and the court was clear in its language, that was necessarily adverse to others. And that was the context in which the court rejected the consultant corollary's application. Yeah, I mean, Ms. Chaffetz, that's the key issue for me. I mean, the Supreme Court has never recognized the consultant corollary as such. It has assumed it exists and found that it was a bridge too far in Klamath. So, the question is, what's the guardrails that Klamath lays out? And if it's interest of the consultant, then I think you have a problem. I think that's what Mr. Jobe says. Because I can easily imagine how the participants here, the party participants, are interested. I mean, I assume they're very interested, they would be very interested in an NTSB report exonerating the engine or the engine manufacturer or the helicopter manufacturer from any role in this disaster. But as you point out, Klamath, I mean, maybe it's something more than interested. So, help me with that. I mean, what is it that distinguishes the Indians who are advising on water rights from the manufacturer here? Okay. So, to take it from the beginning. So, in Klamath, the tribe comes in and they're doing exactly what they're supposed to be doing. They are advocating for themselves. And it's not just that they have an interest. We can talk about cases like McKinley and even cases from this arguably, I mean, people have an interest. An interest isn't what creates the problem. In Klamath, it's that their interest that they're advocating on behalf of is necessarily adverse in a zero-sum way to others. They're not there to advise the government based on technical expertise. They're not being brought in because they have some special well of knowledge. They're being brought in specifically because they have an interest. And the Bureau of Indian Affairs is Let me push back in two ways on that. One, a legal point. Another, a factual point. On the legal point, I see, I mean, we're all obviously carefully parsing the words of the Klamath opinion. On page 14, even if there were no rival interests at stake, the tribe would still be pressing its own view of its own interest in its communications with the Bureau. So, I agree with you that factually, this case is not within the four corners of But isn't the court? No, no, let me use that language. Let me, yeah, so absolutely. So, when they say that, right, even if they're still advancing their own interests, and that's what they're supposed to be doing, the court says, look, it's legitimate. This case is not that, right? These entities are coming in and they have agreed to a set of ground rules under the convention. They've agreed to a set of ground rules under the regulations that when they're sending a representative, this technical expert in, the person's not there to represent the company's interest, it's there to participate in NTSB's process. That person is walled off in terms of communications. So, whatever information they gather, they can't take back with them. So, we know that that concern the plaintiffs raise is not in play. And there's other restrictions on their ability to disclose information. Let's say an employee is tasked by the NTSB to play this role. You tell them, you know, you're just here to help us do good public, you know, you are not allowed to share any of this with your company. Let's say that employee violates it, hands over every single document, every single email. What then? What happens to the employee? So, it would depend. And certainly, the investigator in charge always has the ability to remove or direct the removal of anybody from the investigation who is seen to be breaking the law. If the materials are just disclosed, is the question about what the punishment would be? I'm just curious. You say that you want this to be a pristine separate thing. But at the end of the day, I don't think it's crazy for a government agency to worry that, look, these employees, after all, are employees of another entity within the regulated community. I'm just kind of curious how far you're willing to take this metaphor. Well, so, I mean, it's this, I mean, as with the fact that if an employee of the agency breaks the rules, and this was really my point, which is just to, before I forget, just to make one point, which is that as I started out here at Clamath, my point was really that they were advancing their interests and that's what they were supposed to be doing. Whereas here, the whole idea and the way the system has always operated, and frankly, if it wasn't working, we wouldn't still be doing it this way so many decades later, is that people are abiding by the rules. And so we don't actually have this situation frequently where we have to think about what kind of sanctions to impose, although the investigators in charge certainly have the authority to remove people if they're concerned about prejudice. And as experts themselves, they would be very capable of doing that. But the point was to be that the entire district court decision here is premised on this assumption of inherent bias, this idea that they must be self-interested and acting pursuant to that self-interest. There is a shared interest here, which is safety. I mean, to be completely blunt, air crashes are not good for anyone. None of these companies benefit from not knowing the true cause of the crash, and that's reflected in how they participate. I know you're running out of time. I just wanted to be sure to ask you one clarifying point here. There are two parts to this analysis. One is whether it's an intra-agency memo, but the other has to do with discoverability, right, or whether a privilege applies or some kind of litigation privilege applies. As I read the district court's opinion, it found that some of the documents would be subject to the deliberative process privilege, but others, the ones that were prepared by Eurocopter and Turbo Mecca, I read the district court's opinion as just saying, well, look, they're not consultants within the corollary, so the documents are not subject to withholding under the exemption. I don't read the district. My point is, suppose we found that was wrong. What do we do at that point? Do we remand to the district court to do a privilege analysis or a deliberative process analysis or something? Yeah, Your Honor, the court didn't. We're here asking for this court to reverse the district court's decision regarding the consultant corollary, and then the necessary next step is a remand. It is true that with regard to a number of the documents that were prepared by NTSB, the court did go so far as to say if it wasn't for this consultant corollary problem that the court saw, these would be protected by the privilege. It just didn't address that with regard to the Turbo Mecca Eurocopter, but all of this is at play on remand. This court doesn't need to reach any of that. We didn't need to address it because there was no ruling against us, but when this court sends it back, at that point, the plaintiff would be free to raise these issues with regard to the documents themselves. I'm just conscious of the fact that when we applied this test way back in the day in Wu, we said, look, we've got to look on a case-by-case, document-by-document basis, I assume, to see whether the documents that are being excluded are actually subject to some kind of litigation privilege. Right. And here, right, the court didn't reach it with regard to those documents and didn't need to, but that would be addressed on remand. I'm happy to address why they would be protected. They're exactly the kind of typical, when you think of the application of the consultant corollary, these are the people, if this court agrees with us that these are properly within the exemption, these are consultants preparing reports to give their technical expertise to the government. I just wasn't sure whether we needed to. No, the final sentence would just be to say that, again, the district court's decision, when it comes to what it did and didn't make findings about, it made this claim about seeing in either the long history of NTSB and the international community operating this way, or in the record specific to this case. And in fact, there are reasons in the record that show that these individuals, these companies were conducting themselves properly. But since I'm out of time, I will stop there. Let me ask you, I know you're out of time. Kim, maybe you could give Mr. Job however them being any more inside than they are because they're involved in the litigation and possibly the cause of the helicopter crash. So on rebuttal, if you would tell me what circumstances would a consultant be too interested for the consultant corollary exception to apply? Because to me, these look like they're too interested. But you can address that on rebuttal. Thank you. Thank you, Your Honor. And I'll just repeat what I said earlier. If you do have a case involving extending the consultant paradigm to somebody from the regulated community, I'd be very interested to see that. Sure. Thank you. I'm going to ballpark and say there was about three, four minutes. Let's go ahead and give Mr. Job four extra minutes. Mr. Job? Yes, Your Honor. May it please the court. Correctly, all three of the judges here today have hit on the problem well. Klamath stands for a Supreme Court decision that basically said you have to be intra-agency. You cannot be outside in Germany or France working for one of these government manufacturers that made this helicopter that killed five people. And if you think there were lawsuits that came out of the crash, we're all dreaming. I was involved from the very beginning on behalf of the hardest case of all, the widow for the pilot. They tried everything they could to blame the pilot for hitting something up on top of Molokai, this really pretty island near Oahu. It's north of there. And there was no evidence. As a matter of fact, they never could determine if he hit anything. But what they were doing the entire time was to, which they have done, I've been in this aviation field my entire career. And every time the manufacturer of these helicopters, the reason the NTSB has done this, as she's pointing out, it's a nice observation. It's a little bit Alice in Wonderland. And the real reason that they bring these people in is they don't have the funding from Congress to hire their own experts. Why? Because they'd have to hire experts in all sorts of fields of helicopters and airplanes. I mean, there's just a myriad of so they're in a way, the way it's set up, Congress needs to go back and redo this whole thing. Right. So your friend on the other side says that these employees are essentially seconded to the agency. What is your take on that understanding of? I think Calhoun stands for the decision principle that they can't be there because of their interest or loyalty to their employees, employers that they came from, they have to be entirely self-interested and inherently not part of the people or the defendants in a litigation case to not have a self-interest. Therefore, they're entitled to be there, but they still are, unfortunately, serving the self-interest of the people that pay them, that provides their retirement and so forth and so on. And that is the reason. So these people are on the company payroll at all times, right? Yes, yes. I regularly see the same people coming to every helicopter crash. If it's an Airbus about it, the NTSB can't afford to hire people like this. But the point is, that's something for Congress to worry about later. But the way the law stands is correct. If they don't work as independent contractors themselves, they don't work for big companies that have been involved in the manufacture of the equipment, they have the right to be there because ICAO, as Judge Duncan points out, says they have the right to be there. And that's true. And that's probably because when Congress set this up back in the 50s for the NTSB, they thought everybody would do the right thing. So let me use an analogy. I don't know your industries as well as obviously you do, but I have experience in the legal industry. So I know of law firms who will let their young associates go to a DA's office, for example. And their associates, while on law firm payroll, will get to be essentially an assistant DA for six months or a year. They get a lot of trial experience. We can see why the law firm would find this valuable. I imagine that at all times, those lawyers are duty-bound as if they were on the government payroll with full responsibilities and fiduciary duty and confidentiality, all the attorney-client duties that everybody else at the DA's office would have. I take it from Ms. Chaffetz, I apologize for the long hypo, that that's sort of analogous to this case, that essentially these employees are secunded over and effectively become public agents, and therefore they're within the exception. Does that sound to you like an accurate depiction of what's going on here? That's an Alice in Wonderland version of what the reality really is. They, just like in Kalamazoo, the Supreme Court said, if they have a self-interest or they're loyal to their employees and employers, excuse me, in the first instance, they cannot really be independent. And they're there on behalf of who they work for and who they get paid by. And in this particular accident, it was- You could say the same thing about these law firms that I'm talking about. They don't expect their associates to be rigging cases in favor of their clients. They expect their associates to be dutifully representing the government. That's just not the case when it comes to airplane manufacturers killing five or six people. That's, you know, when a young DA trainee goes over, like you mentioned, that's an entirely different factual circumstance. These people work for the companies that get sued. They were the first ones to the crash site. Even before the investigator in charge from the NTSB out of Washington got there, they were on the crash scene. I have been in numerous of these cases over the years, and they have self-interest. And they're going to do everything they can to lobby and to try and make it whatever they can to cast blame on somebody else like they tried to do in this case. It didn't work out. But anyway, the NTSB acknowledges the self-interest of their investigators. They would disclose and withhold information and protect their employees. That's the NTSB. But these people don't work for the NTSB. But, you know, you're right. The ICAO gives them the right to be there. And that's because the NTSB can't afford to and they've been doing it. And nobody's ever brought this up. So under FOIA, which is a federal statute where the public has the right to know what they're going to be doing, when you ask for documents, they're generated. And they were used in this investigation. Those documents, unless, as Judge Zaney pointed out, a whole bunch of the ones that he personally in camera looked at. And, you know, I was fine with that. We asked him not to give us any deliberative documents, any documents that had to do with coming to the probable cause of the crash. So that's interesting, Mr. Joe. You would agree that any documents that actually are deliberative privilege, that reflect on the NTSB's deliberations, those shouldn't come out of the FOIA request? I'm just trying to get at what, I read our cases, I'll tell you right now, I'll read our cases in this area as being pretty document specific. Meaning we can't just say, I mean, our Wu case said you can't throw a blanket over all of this stuff. You just can't. That's not what FOIA is there for. It's to protect something specific. It's to protect deliberations, right? Not facts, not factual reports. So in these cases that you've been involved in, do you get something out of the FOIA request that bears on your lawsuit? I mean, I'm just trying to get at the practicalities of this. Well, the practicalities of it are that we are looking for a few FAA documents, still in this case, that are in the, almost for sure in the NTSB, that have to do with the certificates of license by the FAA to allow Blue Hawaiian, the name of the company that was flying this helicopter, to fly for commercial benefit. That's just one of the documents we like to see. But the main thing is the public has an inherent right to know how the NTSB gathers facts. And so just like in the tribe and claimant, consultant corollary cannot be applied to manufacturers and standing to benefit from the NTSB just because the NTSB needs them to be there because they don't have anybody else to help. Because the NTSB is trying to get to the best possible result. So, I mean, what we briefed is exactly on point to what really, why FOIA allows us to, in our request for these documents, to just have not the deliberative documents. Well, but so you say that, I get what you're saying, but if we decided that they're not intra-agency memos because of the interest of the parties, then wouldn't it be helpful? Yes, your honor, I think I can answer that with an affirmative in the sense that they work for the NTSB. They don't come as independent investigators that have no loyalty to anyone. If we decided that, if we agreed with you on that point, wouldn't you get everything? That there would be no exemption, right? We wouldn't get to the second step. Well, actually, well, you wouldn't get to the second step. That's right. But I mean, I was going to say something about that. I can't even remember what it was right this second, but it's really not necessarily important here. They were not intra-agency. They were self-interested because of who they were employed by. That's what claimants pointed out. In our request, if you go look at those in the record, they did say we do not ask for the deliberative documents. So we don't know what they're excluding, but all we know is we've given them, as far as I'm concerned, we don't want you to violate the NTSB's deliberative process, which is made up of the five members of the board. If it's not intra-agency, can I get the exemptions that are covered? And that's really the bottom line. Unless we're going to gut FOIA and get rid of it, which would be a terrible mistake. There are a whole lot of examples where we could talk about that. But the point is, in these investigations, factual records should be produced and there's no consultant corollary if they work for one of the manufacturers or one of the companies involved in the helicopter crash and the ensuing litigation. Does your argument draw a distinction between the, I guess, for lack of a better term, domestic and foreign participants in this? Is there any difference unless they're totally independent and don't work for any of the manufacturers or any of the interested parties or parties that could be drawn into the lawsuit? It's not a matter of training young DAs to know how to do something. They already, the French and German governments, have these people on a, you know, they're just like the NTSB, on a go basis. They send them straight to the crash scene, whether it's in, you know, Europe and Asia, wherever it is, because they want to be able to provide the technical support. But they also want access to the following items. They want to be able to be participants in, they're able to be at the crash site at all times. As I pointed out, they actually got there before the IIC in this case. I've had that lead to problems in other cases here in Louisiana. But anyway, and they have, they are there to witness all the wreckage removal, all of the engineering and scientific testing on other wreckage. They get to provide input to the NTSB on why they shouldn't either do the scientific test or why they should do it. They're invited to provide self-interested submissions of drafts and edits to the drafts of the NTSB's factual investigation in an effort to sway the five members of the NTSB board to vote that it wasn't a manufacturing defect that caused the crash. The victims of the crash, as you may know, are all denied the right to any representative at the crash site. These two big 737 MAX crashes that took place involving Ethiopian Airlines and so forth. I mean, the passengers have no right to be, have anybody there. And the NTSB doesn't want them there. But guess what? Forever, we have had this situation for over 50, 60 years, where the manufacturers who may be at fault, which, of course, the 737 MAX is a good example of where there was fault. Boeing's admitted it. But anyway, those are examples. And the point is that the law is perfectly correct. All you have to do is, I would say, follow the Supreme Court's decision and claim it, and you'll be fine. It really benefits all of us to have actual records, to know what the facts are. And then, you know, we can all have a level playing field. So that really, I believe that concludes my session. If you'd like to answer any questions, you're welcome. Mr. Job, let me ask you, I know the crash was in 2011. What is the status of the litigation for the death claims? The passenger cases, who were truly revenue passengers, who were all killed when it crashed, those were settled almost instantly with the insurance company within probably two years of the crash. Naturally, I've got the hard case, because they always want to blame the pilot. And I'm a pilot. I can tell you, I come to these things with a viewpoint of skepticism on the part of whether the pilot's really all that's good or not. If I can't find anything in the facts, then I am generally persuaded to help a widow for, you know, for a captain of a crash, particularly when I know there's a problem. At least I think there's a problem. But I think that um, we did settle with Airbus. In my case, they've settled. So this is about Blue Hawaiian's wholly owned leasing company. That's the remaining defendant in the Honolulu Federal Court right now. And it has nothing to do with, it has everything to do with the records, because there may be these records on what kind of licensing they did have from the FAA, because they won't even tell us that. And that's why we wanted to get a hold of these records and take a look at. They're factual records. I don't want the delivery of records. The probable cause is over with. And so forth. But... All right. Well, thank you, Mr. Jones. But it really isn't. It's got to be intra-agency to even fall under the exclusions of the cases having to do with FOIA. If they don't work for the agency, they're not hired specifically as individuals to come work for the agency out of goodwill or whatever, and they come from an ICAO international treaty that allows the French and German manufacturers to be at each one of these accidents automatically, then it is what I've been describing, and we just need the factual record, which is what Judge Zady provided after an in-camera review that I have to say I was very impressed with, because he was very thorough. All right. Thank you, Mr. Jobe. Ms. Chaffetz, you've reserved five minutes. Muted. Oh, we can't hear you. Let me try to tick through as quickly as possible responsive points that will incorporate responses to some of the questions that were raised before the end of my time. As Mr. Jobe acknowledges, NTSB needs these experts. There's aircraft-specific expertise that although NTSB's investigators are themselves PhDs and experts in their fields, they can't possibly have all of the knowledge that they need. These people play a critical role in NTSB's role. NTSB's role is not anything related to even regulating these entities, and it's certainly not related to FOIA. NTSB's role is singular. It is about safety, figuring out why crashes happen. You don't dispute, though, that NTSB findings could very well impact later adversarial proceedings. Well, Your Honor, remember the probable cause determination that NTSB makes is not admissible in litigation. So, no, Your Honor. The fact report becomes public, and in fact, I want to emphasize this point because I think this was a concern of Judge Duncan's. A lot becomes public in this process. I would encourage the court to look at the public docket for these matters. The final fact report that NTSB puts out with all of its supporting documentation, photographs, data, all of that becomes 100% public and is admissible in court. The probable cause determination... Is that by statute or regulation or something? It's both. There is a statute that precludes the probable cause determination from being admissible, but it doesn't have that same kind of prohibition on the use of... That's by statute. That's by statute. Then the regulations provide for a lot of information becoming public. I want to highlight two things. Not only does the final fact report... Judge Duncan, to your point, the thing that is not deliberative, the final fact report, the final probable cause reports, those are public. But more than that, if these companies representing themselves as designers, manufacturers of aircrafts, representing their own interests, companies, want to put their views in front of NTSB and want to do that, but those documents become public. That is under the regulations. It's consistent with the convention. It's because if they're coming in to represent their own interests, they're not part of NTSB's deliberative process in an internal way. That's treated quite separately. Under the regulations at 831.14, the way that they read at the time that this case was going on was any person or company whose employees or products were involved in the accident, they can submit proposed findings drawn from the evidence. They can submit proposed probable cause or proposed safety recommendations. Then under 845.3, formerly 837.3, that gets put on the public docket. We don't need FOIA here to shed light on NTSB's process. We know what the type of process they're undertaking, because that's a function of regulations and statutes and the convention. We know what the results of their process are, because that is all made public. What we shouldn't know and don't know is what their deliberative process looks like, because all of the usual principles that Exemption 5 is meant to protect are at play. Mr. Job is acknowledging that these people are playing a key part in that process for their technical expertise. That makes this case utterly- Were you able to find any case law as I asked consultants to extending that to regulators? I should say a few things. I have a case that I think that the best case this court should look to as an analogy is McKinley out of the D.C. Circuit, but a few things. Number one, there are a good number of consultant corollary cases, but a limited number. For example, this court has accepted the consultant corollary, but has just two cases on it, Hoover and Wu. There's not a huge number of cases. What we don't have are any cases in which a court has rejected a consultant on the grounds that they were a regulated entity. I do want to just emphasize again that they're not regulated by NTSB. NTSB makes safety recommendations, but they're not a regulator of these entities as such. Now, an entity that is a regulator, and I think is an important analogy or something important to note in all of this, FAA is one of the participants in this process. Much like these companies, they're brought into the process for their expertise. If the only people involved in these discussions were NTSB and FAA, nobody would be here suggesting that we have a deliberative process privilege for these documents. Remember, FAA has air traffic controllers, and air traffic controllers can be responsible for accidents. You can have accidents that are caused by a failing on FAA's part to have adequate regulations of entities. This idea that interest- Your time is up. Well, just one sentence to wrap it up. It's simply to say that having an interest, cases like McKinley and others make clear that just having an interest is not enough to take us outside the consultant corollary. In this case, these individuals are playing by the rules. The system would have been abandoned long ago if it worked otherwise. Mr. Jobe's argument here is aimed at blowing up a 70-year-old approach to ensuring aviation safety. That would be really extraordinary, and I would urge caution. Thank you so much for your time. Your case is submitted. Thank you.